Filed 10/13/21  P. v. Dixon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092798 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F00253) |
| v. | |
| MARQUEL DIXON, | |
| Defendant and Appellant. | |

While defendant Marquel Dixon was serving a life sentence for killing Perrell Marquis Waters, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015, §§ 1-4) (Senate Bill No. 1437).  This bill amended the law governing murder liability under the felony murder and natural and probable

consequences theories and provided a new procedure under Penal Code section 1170.95[1] for eligible defendants to petition for recall and resentencing.

Defendant appeals from the trial court's order denying his petition for resentencing under section 1170.95. He argues the trial court erred in relying on a special circumstance finding to conclude no prima facie showing had been made. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying defendant's crimes, set forth in our unpublished opinion *People v. Scott* (Dec. 10, 2013, C068544) [nonpub. opn.] (*Scott*) affirming Dixon's convictions, were as follows:

In 2009, there was significant internecine conflict between various subsets of the Bloods street gang in Sacramento. (*Scott, supra*, C068544, at p. 3.) Marcus Scott and Ronald Grant were active members of one subset, the Fourth Avenue Bloods, and the victim, Waters, was a member of a different subset, the Elm Street Bloods. (*Ibid.*) Jumal Gray was a Bloods gang member, but his subset was unknown. (*Ibid.*) It was not clear whether defendant was a gang member at the time. (*Ibid.*)

In November 2009, Scott and Grant were each involved in shootings, for which they believed the Elm Street Bloods, including Waters, were responsible. (*Scott, supra*, C068544, at pp. 3-4.) Scott wanted to retaliate and threatened to kill Waters. (*Id.* at p. 4.)

The next month, Grant, Gray, Scott, and defendant met up and decided to commit a robbery. (*Scott, supra*, C068544, at p. 5.) The group went to the Woodbridge Apartments to carry out the robbery. (*Ibid.*) Both Scott and Grant were armed. (*Ibid.*) Gray stayed in the car to act as the getaway driver while defendant, Grant, and Scott got

---

[1] Further undesignated statutory references are to the Penal Code.

out and walked behind the apartments. (*Ibid.*) A short time later, Gray heard gunshots and defendant came running back to the car before the shots stopped; defendant got into the car and Scott and Grant soon followed. (*Ibid.*)

Waters had been sitting in his car at the apartment complex when his neighbor saw two shooters open fire. (*Scott, supra*, C068544, at pp. 5-6.) The neighbor saw a third man run away when the shooting started. (*Id.* at p. 6.) Waters was struck several times and later died at the hospital from his gunshot wounds. (*Ibid.*)

Defendant, Scott, Grant, and Gray were charged with the murder and attempted robbery of Waters (§ 187, subd. (a), count one; §§ 664, 211, count two).[2] (*Scott, supra*, C068544, at pp. 8-9.) A jury found defendant guilty of first degree murder with a robbery-murder special circumstance (§ 190.2, subd. (a)(17)(A)), and attempted robbery (§§ 664/211). The jury also found true various firearm and gang enhancements. (§§ 12022.53, subd. (d), 186.22, subd. (b)(1).) (*Scott, supra*, C068544, at p. 9.)

Following the jury's guilty verdicts, the trial court sentenced defendant to life without parole for the murder, plus 25 years to life in prison for the firearm enhancement. The court did not impose the gang enhancement and stayed sentence on the attempted robbery count (§ 654).

Defendant appealed, primarily arguing that there was insufficient evidence he aided or abetted Scott and Grant or conspired with them as to attempted robbery necessitating reversal of his murder conviction, and that insufficient evidence supported the felony murder special circumstance because he was not a major participant and did not act with reckless indifference to human life. (*Scott, supra*, C068544, at pp. 28-34.) We rejected both claims. (*Ibid.*)

---

[2] Gray pleaded to attempted robbery and voluntary manslaughter for the benefit of a gang. (*Scott, supra*, C068544, at p. 5, fn. 2.)

Although we affirmed his convictions, we remanded for resentencing because the trial court was unaware of its sentencing discretion to impose a lesser penalty of 25 years to life in prison, and so the court could consider relevant juvenile sentencing factors. (*Scott, supra*, C068544, at pp. 34-37, 45.) On remand, the court resentenced defendant to 25 years to life on the murder count plus an additional 25 years to life for the firearm enhancement for a total of 50 years to life in prison.[3]

In April 2019, defendant filed a pro per petition for resentencing pursuant to section 1170.95. He checked various boxes on a form petition alleging that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; that at trial he was convicted of first degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; and that he could not now be convicted of first degree murder because of changes made to section 188 and section 189, effective January 1, 2019.

Defendant's form petition also checked a box alleging as relevant here: (1) he was not the actual killer; (2) he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in committing first degree murder; and (3) he was not a major participant or did not act with reckless indifference to human life during the course of the crime. He requested appointed counsel.

The People filed a motion to dismiss the petition, arguing as relevant here that defendant had failed to make a prima facie showing that he was eligible for resentencing

---

[3] Defendant appealed from the resentencing, arguing his sentence constituted cruel and unusual punishment. (*People v. Dixon, supra,* C077755, at p. 1). We determined the issue was moot, but remanded the matter to allow defendant an opportunity to request a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261, to make a record of youth-related mitigating factors for consideration at a future youth offender parole hearing. (*Dixon,* at pp. 2-5.)

under section 1170.95. Defendant's appointed counsel opposed the motion to dismiss, arguing Senate Bill No. 1437 did not unconstitutionally amend or violate several previous propositions or the separation of powers doctrine, and that he had satisfied the relatively low burden of establishing a prima facie case for relief thereby requiring an order to show cause and a hearing under section 1170.95, subdivision (d).

After considering the parties' briefing but before holding a hearing, the trial court denied the petition, finding defendant had failed to make the requisite prima facie showing. In so ruling, the court found that defendant was precluded from relief as a matter of law given the jury's true finding on the felony murder special circumstance, which necessarily meant that the jury found defendant either was the actual killer, aided and abetted the actual killer with the intent to kill, or was a major participant who acted with reckless indifference to human life. Because nothing in the record showed defendant had successfully challenged the special circumstance, the jury's true finding remained valid thus precluding relief under section 1170.95. Defendant appealed and his notice of appeal was deemed timely filed under the constructive filing doctrine.

## DISCUSSION

### I

### *Legal Background*

Senate Bill No. 1437 amended the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation accomplished this by amending sections 188 and 189 and adding section 1170.95 to the Penal Code.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely

5

on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill No. 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial . . . . [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

As relevant here, once a complete petition is filed, "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served . . . . If the petitioner makes a

6

prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).)

## II

### *Prima Facie Showing*

Defendant contends the court erred in summarily denying his petition based on the jury's true finding on the felony murder special circumstance because the finding was made *before* the Supreme Court clarified the definitions of "major participant" and "reckless indifference to human life" in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522.[4]  Citing several cases that have found a special circumstance finding that predates *Banks* and *Clark* does not conclusively establish ineligibility for relief under section 1170.95, defendant asserts that *Banks* and *Clark* require further litigation of his case to determine his eligibility for relief.  (See, e.g., *People v. Harris* (2021) 60 Cal.App.5th 939, 956-958 [§ 1170.95 does not require a defendant to challenge a pre-*Banks* and *Clark* special circumstance finding in a habeas corpus proceeding before he or she may successfully challenge the underlying murder conviction in a § 1170.95 proceeding], review granted Apr. 28, 2021, S267802; *People v. Torres* (2020) 46 Cal.App.5th 1168 [same], review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85 [same], review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250 [same], review granted Nov. 18, 2020, S264954.)

As defendant concedes, however, many cases have come to the opposite conclusion.  Numerous courts have found that a jury's true finding on a felony murder

_____

[4]  To the extent defendant argues the court erred in considering the record of conviction when determining whether he met his prima facie burden under section 1170.95, the Supreme Court recently held otherwise in *People v. Lewis* (2021) 11 Cal.5th 952.  Thus, the trial court properly considered the record of conviction in ruling on the prima facie issue.

special circumstance, even if it predates *Banks* and *Clark* (as does defendant's robbery-murder special circumstance here) precludes relief as a matter of law. (See, e.g., *People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted Oct. 14, 2020, S264033 [defendants seeking relief on the basis of *Banks/Clark* must do so through habeas corpus]; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142-1143 [same], review granted Oct. 14, 2020, S264284 (*Galvan*); *People v. Murillo* (2020) 54 Cal.App.5th 160, 167-169 [same], review granted Nov. 18, 2020, S264978; *People v. Allison* (2020) 55 Cal.App.5th 449, 457-459 [same], review denied Dec. 23, 2020 (*Allison*); *People v. Jones* (2020) 56 Cal.App.5th 474, 482-485 [same], review granted Jan. 27, 2021; *People v. Nunez* (2020) 57 Cal.App.5th 78, 90-93 [same], review granted Jan. 13, 2021, S265918.)

In *Galvan*, for example, the court considered the import of section 1170.95, subdivision (a)(3)'s language that states: "In order to be eligible for resentencing, a defendant must show that he or she 'could not be convicted of first or second degree murder *because of changes to Section[s] 188 or 189 made effective*' as part of Senate Bill No. 1437." (*Galvan, supra*, 52 Cal.App.at p. 1142, italics added; § 1170.95, subd. (a)(3).) The court concluded that as to Galvan, who, like defendant, was convicted of first degree murder with a special circumstance finding under section 190.2, subdivision (a)(17) made before *Banks* and *Clark* were decided (*Galvan*, at pp. 1138-1139), subdivision (a)(3)'s requirement was not met because "[a]lthough [the defendant] is asserting that he could not now be convicted of murder, the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437. Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life. If [the defendant] is entitled to relief based on *Banks* and

8

*Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus." (*Galvan*, at p. 1142.)

The *Galvan* court also observed that permitting defendants to relitigate a special circumstance finding by way of a section 1170.95 petition would "give [them] an enormous advantage over other similarly situated defendants based solely on the date of [their] conviction." (*Galvan, supra*, 52 Cal.App.5th at p. 1142.) "Defendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that substantial evidence supported that finding." (*Id.* at pp. 1142-1143.) Defendants convicted before *Banks* and *Clark*, on the other hand, could challenge the special circumstance findings under section 1170.95, which would require the prosecution "to prove the special circumstance beyond a reasonable doubt." (*Galvan*, at p. 1143.) "[N]othing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants." (*Ibid.*)

*Allison* similarly emphasized that *Banks* and *Clark* did not change the law, but merely clarified the same principles that existed earlier. (*Allison, supra*, 55 Cal.App.5th at p. 457; see also *In re Miller* (2017) 14 Cal.App.5th 960, 978.) Indeed, the pattern jury instructions remained the same after *Banks* and *Clark*, and merely resulted in the addition of *optional* language thereto. (*Allison,* at p. 457.) The requirements for a finding of felony murder under the newly amended version of section 189 were *identical* to the requirements of the felony murder special circumstance that had been in effect at the time of the challenged murder conviction (for the defendant in *Allison* in 1997, and for defendant here in 2011). (*Allison,* at p. 456.) Thus, the special circumstance finding showed "as a matter of law that Allison *could* still be convicted of felony murder even under the newly amended version of section 189" and precluded a prima facie showing of eligibility. (*Id.* at p. 457.)

9

The Supreme Court is poised to resolve this split, having granted review in *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606, on the issue of whether a felony murder special circumstance finding under section 190.2, subdivision (a)(17) made before *Banks* and *Clark* precludes a defendant from making a prima facie showing of eligibility for relief under section 1170.95. In the meantime, we find the authorities such as *Galvan* and *Allison* more persuasive on this issue than the cases to the contrary.

As further support for our conclusion, we note section 1170.95, subdivision (d)(2) anticipates, rather than precludes the possibility of habeas relief before a section 1170.95 petition because one way to obtain a "prior finding" that meets the subdivision's requirements is via habeas. (*In re Ramirez* (2019) 32 Cal.App.5th 384, 406.) If a defendant has successfully obtained such relief, the trial court must provide the petitioner access to section 1170.95 relief. Nothing precludes relief under section 1170.95; the language simply presumes a petitioner will pursue alternative relief first.

We are convinced that the appropriate avenue for defendant's challenge to the special circumstance allegations is through a petition of habeas corpus, rather than the section 1170.95 petition filed in this case. (See *In re Miller, supra*, 14 Cal.App.5th at p. 979 [permitting habeas challenge to special circumstance conviction].) The trial court did not err when it denied defendant's petition.

## DISPOSITION

The trial court's order denying defendant's petition under section 1170.95 is affirmed.

            /s/            

Duarte, J.

We concur:


    /s/        

Robie, Acting P. J.


    /s/        

Mauro, J.